# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MATTHEW J. DAYAK, JEFFREY S. JACOBS and THOMAS DORE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 1:22-cv-02974 |
| v. | ) ) | Judge John F. Kness |
| REYES HOLDINGS, LLC, THE BOARD OF DIRECTORS OF REYES HOLDINGS, LLC, REYES HOLDINGS, LLC EMPLOYEE BENEFITS COMMITTEE and JOHN DOES 1-30. | ) ) ) ) ) ) | |
| *Defendants*. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION TO DISMISS THE CLASS ACTION COMPLAINT

Matthew R. Kipp (6201470)
Laura Bernescu (6316545)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
155 N. Wacker Drive, Suite 2700
Chicago Illinois 60606
Telephone:    312-407-0700
matthew.kipp@skadden.com
laura.bernescu@skadden.com

James R. Carroll (*pro hac vice* pending)
Michael S. Hines (*pro hac vice* pending)
Mary E. Grinman (*pro hac vice* pending)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
Telephone:    617-573-4800
james.carroll@skadden.com
michael.hines@skadden.com
mary.grinman@skadden.com


Dated:  September 30, 2022

*Counsel for Defendants*
*Reyes Holdings, L.L.C., The Board Of*
*Directors Of Reyes Holdings, L.L.C., and*
*Reyes Holdings, L.L.C. Employee Benefits*
*Committee*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................ 3

    A.    The Plan ........................................................................................... 3

    B.    Plaintiffs' Allegations ...................................................................... 3

ARGUMENT ................................................................................................................. 4

I.    PLAINTIFFS FAIL TO PLEAD ANY FACTS TO SUPPORT
A REASONABLE INFERENCE OF IMPRUDENT CONDUCT (COUNT I) ................ 5

    A.    Plaintiffs' Recordkeeping Fee Allegations
        Fail To State A Claim For Breach Of Fiduciary Duty ............................................. 6

        1.    Plaintiffs' Recordkeeping Fee Calculations Are Wrong ............................ 6

        2.    The Comparative Plans That Plaintiffs Cite Do Not Provide
            Meaningful Benchmarks For the Plan's Recordkeeping Fees .................... 7

        3.    Plaintiffs' Speculative Allegation That Plan Fiduciaries Did Not
            Conduct A Request For Proposal Does Not Suggest Imprudence ............. 10

    B.    Plaintiffs' Allegations Concerning The Plan's
        Target Date Funds Fail To State  A Claim For Breach Of Fiduciary Duty .......... 11

    C.    Plaintiffs' One-Paragraph Performance Allegations Concerning
        The Hartford Mid Cap Fund Are Woefully Inadequate To State A Claim .......... 14

II.    PLAINTIFFS' CONCLUSORY ALLEGATIONS CONCERNING
THE DUTY TO MONITOR FAIL TO STATE A CLAIM (COUNT II) ........................ 15

CONCLUSION ............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                                                           **<u>PAGE(S)</u>**

*Albert v. Oshkosh Corp.*,
    No. 20-C-901, 2021 WL 3932029 (E.D. Wis. Sept. 2, 2021)..............................5, 8, 10, 15

*Albert v. Oshkosh Corp.*,
    47 F.4th 570 (7th Cir. 2022) ................................................................................ *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................4

*Baumeister v. Exelon Corp.*,
    No. 21-CV-6505, 2022 WL 4477916 (N.D. Ill. Sept. 22, 2022) .............................8, 9, 12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................4

*DeBruyne v. Equitable Life Assurance Society of United States*,
    920 F.2d 457 (7th Cir. 1990) ...............................................................................13

*Hughes v. Northwestern University*,
    142 S. Ct. 737 (2022)..........................................................................................5

*Jacobs v. Verizon Communications, Inc.*,
    No. 16 CIV. 1082 (PGG), 2017 WL 8809714 (S.D.N.Y. Sept. 28, 2017) .......................12

*Jenkins v. Yager*,
    444 F.3d 916 (7th Cir. 2006) ...............................................................................13

*Mator v. Wesco Distribution, Inc.*,
    No. 2:21-CV-00403-MJH, 2022 WL 3566108 (W.D. Pa. Aug. 18, 2022)........................9

*Patterson v. Morgan Stanley*,
    No. 16-CV-6568 (RJS), 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019)..............................13

*Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Medical Centers Retirement*
    *Plan v. Morgan Stanley Investment Management Inc.*,
    712 F.3d 705 (2d Cir. 2013)...............................................................................4, 5

*Riley v. Olin Corp.*,
    No. 4:21-CV-01328-SRC, 2022 WL 2208953 (E.D. Mo. June 21, 2022) ..............9, 10, 15

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) .............................................................................9, 14

*Wehner v. Genentech, Inc.*,
    No. 20-CV-06894-WHO, 2021 WL 2417098 (N.D. Cal. June 14, 2021)........................12

*White v. Chevron Corp.*,
    No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ........................10, 13

**<u>STATUTES</u>**

29 U.S.C. § 1104(a) .................................................................................................................4, 5

## PRELIMINARY STATEMENT

Reyes Holdings, L.L.C. ("Reyes") is a global leader in the production and distribution of food and beverage products. Reyes offers employees the opportunity to save for their retirement by participating in the Reyes Holdings 401(k) Thrift Plan (the "Plan").

This case – brought by three former employees of Reyes affiliates – concerns allegations that Defendants breached their fiduciary duty of prudence under the Employee Retirement Income Security Act of 1974 ("ERISA") because they (1) negotiated Plan recordkeeping fees[1] that Plaintiffs allege were too high, (2) retained as investment options in the Plan a custom suite of "target date funds"[2] that Plaintiffs allege underperformed certain other target date products that Plaintiffs cherry-picked with hindsight, and (3) retained the Hartford Mid Cap Class Y Fund as an investment option in the Plan even though it allegedly underperformed its unidentified peers. Just last month, the Seventh Circuit affirmed the 12(b)(6) dismissal of substantially similar claims. *Albert v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022) ("*Albert II*"). In doing so, the Seventh Circuit held that the plaintiff's conclusory allegations of excessive plan fees did not support a determination that the plaintiff's proffered comparators were meaningful benchmarks, and therefore did not provide the court with the appropriate "context that could move the claim from possibility to plausibility." *Id.* at 580 (citation omitted). The Seventh Circuit's analysis in *Albert II* warrants dismissal here.

---

[1] "'[R]ecordkeeping' is a catchall term for the suite of administrative services typically provided to a defined contribution plan" (*see* Compl. ¶¶ 61-62), including, among many other services, "track[ing] the balances of individual accounts, provid[ing] regular account statements, and offer[ing] informational and accessibility services to participants." *See Albert v. Oshkosh Corp.*, 47 F.4th 570, 574 (7th Cir. 2022) (citation omitted).

[2] A "target date fund" is an investment in which the asset allocation changes over time as investors age, generally reducing exposure to equity and increasing exposure to bonds and cash. (*See* Compl. ¶¶ 84-85.)

*First*, Plaintiffs' assertion that Plan participants paid annual recordkeeping fees ranging between $67.64 and $142.27 to the Plan's recordkeeper is wrong. For at least two of those years, Plaintiffs used inaccurate Forms 5500, ignoring the updated versions of those forms, which causes Plaintiffs' numbers to be inflated by at least 25%. Moreover, even if Plaintiffs' allegations are taken as true, Plaintiffs' attempt to compare the alleged recordkeeping fees paid by the Plan to fees purportedly paid by other retirement plans fails to satisfy the Seventh Circuit's requirement that a plaintiff provide a meaningful benchmark. In fact, the Seventh Circuit in *Albert II* held that identical allegations failed as a matter of law to state a claim for breach of fiduciary duty under ERISA.

*Second*, Plaintiffs' allegations concerning the Plan's target date funds fare no better. Similar to their recordkeeping fee allegations, Plaintiffs fail to provide the requisite context for why their hindsight-based, cherry-picked comparators are meaningful. Moreover, Plaintiffs' performance comparisons are limited to performance as of a *single quarter end*. Even if Plaintiffs' comparisons were meaningful, and they are not, the Seventh Circuit has long held that ERISA fiduciary duties are not determined by mere investment performance. *Id.* at 579 ("the ultimate outcome of an investment is not proof of imprudence" (citation omitted)).

*Third*, Plaintiffs' allegation that the Hartford Mid Cap Class Y Fund underperformed its peers fails for the same reasons. Absent from the Complaint are any allegations concerning the time period(s) during which the fund underperformed, the amount of that alleged underperformance, or which peers outperformed the fund. Yet again, the Complaint fails to provide the Court with the appropriate "context that could move the claim from possibility to plausibility." *Id.* at 580 (citation omitted).

The Complaint should be dismissed with prejudice.

2

# BACKGROUND

## A. The Plan

The Plan is a "defined contribution" 401(k) plan that allows eligible employees to contribute savings to individual participant accounts. (Compl. ¶ 41.) Each participant's account is funded through a combination of the participant's contributions, Reyes's contributions, and earnings from the investment options selected by the participant. (*See id.* ¶¶ 41, 43-44.) The Plan is participant-directed; that is, each participant may choose to allocate his or her account into any of the investment options available in the Plan. (*Id.* ¶ 50.) The Plan's investment lineup is comprised of a broad array of investment options managed by different third-party managers, including both actively managed and passively managed funds. (*See id.* ¶ 50; Ex. 1 (2020 Form 5500); Appendix A.[3]) The Plan's investment options span a variety of asset classes, including large cap, mid cap, small cap, international equity, and bond funds as well as target date funds. (*Id.*) Between 2016 and the present, the Plan contracted with John Hancock Retirement Plan Services ("John Hancock") to receive recordkeeping services. (Compl. ¶ 66.)

## B. Plaintiffs' Allegations

Plaintiffs Matthew J. Dayak, Jeffrey S. Jacobs, and Thomas Dore are three former employees of Reyes affiliates who purport to assert claims on behalf of a putative class comprised of "[a]ll persons . . . who were participants in or beneficiaries of the Plan, at any time between June 7, 2016 through the date of judgment" excluding Defendants. (*Id.* ¶¶ 18-20, 34.) Plaintiffs assert two counts:

---

[3]     Citations in the form of "Ex. __" are to the Index Of Exhibits submitted herewith. Appendix A provides a complete list of Plan investment options as of December 31, 2020, as reported in the Plan's most recent Form 5500, an "annual report that 401(k) plans are required to file with the [Department of Labor] and U.S. Department of Treasury pursuant to the reporting requirements of ERISA." (Compl. ¶ 62(H) n.6.)

3

- Count I alleges that the Plan fiduciaries breached their fiduciary duty of prudence under ERISA § 404, 29 U.S.C. § 1104, by allegedly failing to control the Plan's recordkeeping and administrative costs and by retaining allegedly imprudent investment options in the Plan.  (*Id.* ¶¶ 93-99.)

- Count II alleges that Reyes and the Reyes Board of Directors breached their fiduciary duty to monitor the performance and processes of the Plan's other fiduciaries.  (*Id.* ¶¶ 100-106.)

For the reasons set forth below, both Counts should be dismissed as a matter of law for failure to state a claim.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).  Although a court must take the allegations in a plaintiff's pleadings as true and make all reasonable inferences in the plaintiff's favor, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Id.* at 545 (alteration in original) (citation omitted). Rather, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"In putative ERISA class actions, Rule 12(b)(6) motions are an 'important mechanism for weeding out meritless claims.'"  *Albert II*, 47 F.4th at 577 (citation omitted). Indeed, "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests."  *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013).  Dismissing ERISA claims that rest on conclusory allegations – like those here – "prevent[s] settlement extortion" where "a plaintiff

4

with a largely groundless claim [will] simply take up the time of a number of other people, with

the right to do so representing an *in terrorem* increment of the settlement value, rather than a

reasonably founded hope that the discovery process will reveal relevant evidence." *Id.* (second

alteration in original) (citations omitted).

## I.     PLAINTIFFS FAIL TO PLEAD ANY FACTS TO SUPPORT A REASONABLE INFERENCE OF IMPRUDENT CONDUCT (COUNT I)

Count I alleges that the Plan's fiduciaries breached their fiduciary duty of

prudence under ERISA § 404.  (Compl. ¶¶ 93-99.)[4]  ERISA § 404 imposes a "[p]rudent [person]

standard of care" for fiduciaries of employee benefit plans.  29 U.S.C. § 1104(a).  The prudent

person standard charges fiduciaries with acting "with the care, skill, prudence, and diligence

under the circumstances then prevailing that a prudent [person] acting in a like capacity and

familiar with such matters would use in the conduct of an enterprise of a like character and with

like aims." *Id.* § 1104(a)(1)(B).  "Importantly, the prudence standard is processed-based, not

outcome based." *Albert I*, 2021 WL 3932029, at *4 (citation omitted).  Because "the

circumstances facing an ERISA fiduciary will implicate difficult tradeoffs," courts "must give

due regard to the range of reasonable judgments a fiduciary may make based on her experience

and expertise." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022).  As such, courts faced with a

motion to dismiss an ERISA breach of fiduciary duty complaint should "apply a 'careful,

---

[4]     The Complaint does not appear to allege a claim for breach of the duty of loyalty.  In an abundance of caution, Defendants note that to the extent Plaintiffs intended to allege such a claim, the Court should dismiss it because Plaintiffs have failed to allege any facts supporting a separate breach of the duty of loyalty. *See, e.g.*, *Albert v. Oshkosh Corp.*, No. 20-C-901, 2021 WL 3932029, at *7 (E.D. Wis. Sept. 2, 2021) ("*Albert I*") (holding that "[p]laintiffs must do more than recast allegations of purported breaches of fiduciary duty as disloyal acts" and that "[b]ecause the Complaint does not contain any allegations beyond those pertaining to an alleged breach of fiduciary duty, [p]laintiff's claims must be dismissed"), *aff'd*, 47 F.4th 570 (7th Cir. 2022).

context-sensitive scrutiny of a complaint's allegations' to 'divide the plausible sheep from the meritless goats.'" *Albert II*, 47 F.4th at 577, 580 (citation omitted) (affirming the dismissal of breach of prudence allegations where the "complaint simply d[id] not provide 'the kind of context that could move this claim from possibility to plausibility'" (citation omitted)). Plaintiffs' Complaint fails to provide any of the context necessary to push it over the line of plausibility, and instead repeats and recycles allegations that other courts – including the Seventh Circuit – have repeatedly dismissed in nearly identical circumstances. So too should this Court.

**A.      Plaintiffs' Recordkeeping Fee Allegations**
**        Fail To State A Claim For Breach Of Fiduciary Duty**

Plaintiffs assert that Defendants breached their fiduciary duties by allowing Plan participants to pay allegedly "excessive recordkeeping and administrative fees" to the Plan's recordkeeper, John Hancock. (*See* Compl. ¶¶ 60, 66, 75.) Plaintiffs attempt to support this claim through a patchwork of speculative assertions and theories that have been rejected by numerous courts under similar circumstances. Those assertions, even if taken as true, are insufficient to state a claim for breach of fiduciary duty by Defendants.

**1.      Plaintiffs' Recordkeeping Fee Calculations Are Wrong**

Plaintiffs assert that Plan participants paid between $67.64 and $142.27 annually for recordkeeping fees. (Compl. ¶ 75.) Plaintiffs purport to calculate that range by adding the direct and indirect compensation to John Hancock reported in the Plan's Forms 5500, and dividing that total by the number of Plan participants for each year. (*Id.*) But Plaintiffs' calculations are wrong.

For 2018 and 2019, Plaintiffs incorrectly allege that the "direct" recordkeeping fees paid to John Hancock were $3,603,985 and $2,756,255, respectively. (*Id.*) However, as reported in the Plan's Forms 5500 for those years – restated versions of which were filed months

before Plaintiffs filed the Complaint – the actual total fees paid in 2018 and 2019 were $1,793,324 and $1,994,368, respectively. (*See* Exs. 2–3 (2018 and 2019 Forms 5500).) Even if recordkeeping fees could be calculated accurately by simply reviewing Forms 5500 (and they cannot be), Plaintiffs' calculated fees are off by more than 50% for 2018 and 25% for 2019.

Moreover, the Complaint does not explain why the "indirect" compensation cited by Plaintiffs should be counted in the "fees Plan participants were required to pay." (*See* Compl. ¶ 60.) To the extent that Plaintiffs argue that indirect costs include so-called revenue sharing, *see Albert II*, 47 F.4th at 580 ("[i]ndirect compensation refers to revenue-sharing arrangements in which some of the money raised via expense ratios for investment management fees is shared with the recordkeeper"), it is important to note that revenue sharing fees are frequently rebated back to Plan participants. *See, e.g.*, *id.* at 581 (observing that revenue sharing payments may revert back to participants and that "the Form 5500 on which [plaintiff] relies does not require plans to disclose precisely where money from revenue sharing goes").

### 2. The Comparative Plans That Plaintiffs Cite Do Not Provide Meaningful Benchmarks For the Plan's Recordkeeping Fees

Plaintiffs assert that the recordkeeping fees paid by the Plan to John Hancock are excessive "[b]y way of comparison." (Compl. ¶ 76.) In support, Plaintiffs indiscriminately refer to (1) the alleged recordkeeping fees paid in 2018 by six other retirement plans (that Plaintiffs deem, without any factual basis, to be "well managed") to recordkeepers other than John Hancock, (2) the alleged recordkeeping fees paid by seventeen other retirement plans to recordkeepers other than John Hancock between 2013 (*i.e.*, before the putative class period began) and 2019, and (3) "some authorities" that have purportedly "recognized that reasonable rates for large plans typically average around $35 per participant." (*Id.* ¶¶ 78-80.) Plaintiffs' allegations and inapt comparisons fail to provide the kind of information that would allow the

Court to "apply a 'careful, context-sensitive scrutiny'" of the Complaint as required by the Seventh Circuit. *See Albert II*, 47 F.4th at 577 (citation omitted).

   *First*, Plaintiffs' comparison of the Plan's recordkeeping fees to a cherry-picked assortment of other plans' alleged recordkeeping fees is unavailing. (*See* Compl. ¶¶ 78-79.) Plaintiffs fail to allege how the services provided by John Hancock to the Plan are equivalent in value to the comparator plans, all of which are serviced by different recordkeepers altogether. Just last month, the Seventh Circuit affirmed dismissal of nearly identical allegations. *Albert II*, 47 F.4th at 570. Like here, the plaintiff in *Albert* alleged that the recordkeeping fees of the plan at issue "were excessive when compared with other comparable 401(k) Plans offered by other sponsors that had similar numbers of plan participants and similar amounts of money under management." *Albert I*, 2021 WL 3932029, at *2. The district court dismissed those allegations, concluding that the plaintiff had not "allege[d] any facts as to what would constitute a reasonable fee or any facts suggesting that the fee charged by [the plan's recordkeeper was] excessive in relation to the services provided" and that "[t]he mere existence of purportedly lower fees paid by other plans says nothing about the reasonableness of the Plan's fees." *Id.* at *5. The Seventh Circuit affirmed, holding that the plaintiff's "complaint simply d[id] not provide 'the kind of context that could move this claim from possibility to plausibility.'" *Albert II*, 47 F.4th at 580 (citation omitted). Last week, Judge Blakey of this Court also dismissed similar allegations that were based on "comparator charts" which are nearly identical to those cited by Plaintiffs here. *Baumeister v. Exelon Corp.*, No. 21-CV-6505, 2022 WL 4477916, at *2 (N.D. Ill. Sept. 22, 2022). (*See also* Compl. ¶¶ 78-79 compared to Ex. 5 (*Baumeister* Complaint) ¶ 154.) Judge Blakey held that the plaintiffs "ple[]d no facts to show whether the selected comparators receive recordkeeping services of a similar nature and quality to those offered by the Plan's

recordkeeper. . . . Thus, *Albert* directs that any claims based upon these theories must be dismissed." *Baumeister*, 2022 WL 4477916, at *2. *See also Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022) (affirming dismissal of recordkeeping fee allegations and holding that the plaintiff "failed 'to allege that the fees were excessive relative to the services rendered'" (citation omitted)); *Mator v. Wesco Distrib., Inc.*, No. 2:21-CV-00403-MJH, 2022 WL 3566108, at *7 (W.D. Pa. Aug. 18, 2022) (dismissing recordkeeping fee allegations premised on "a price tag to price tag comparison" that did "not account for the quality of services" and holding that "[w]ithout such allegations, the [p]laintiffs have engaged in a speculative fishing expedition" (citation omitted)).

Like in *Albert*, *Baumeister*, *Smith*, and *Mator*, Plaintiffs fail to make any comparison between the services provided by John Hancock to the Plan and the services provided by other recordkeepers to the comparator plans. Plaintiffs merely assert – without support – that "[t]he services chosen by a large plan do not affect the amount charged by recordkeepers." (Compl. ¶ 63.) That allegation is insufficient as a matter of law under *Albert II*.

*Second*, Plaintiffs provide no explanation for why statements by "some authorities" cited in case law concerning purportedly reasonable recordkeeping fees of other retirement plans have any bearing on the recordkeeping fees paid by this Plan. (Compl. ¶ 80 n.10.) Indeed, the Eastern District of Missouri recently rejected identical allegations in *Riley v. Olin Corp.*, No. 4:21-CV-01328-SRC, 2022 WL 2208953, at *4 (E.D. Mo. June 21, 2022). In *Riley*, plaintiffs relied on the same exact "authorities" as those cited by Plaintiffs here to support their claim of excessive recordkeeping fees, including "expert opinions proffered by plaintiffs in other cases, an unspecified declaration, and the terms of a settlement agreement reached in another unrelated case." *Id.* (citation omitted). The court dismissed those claims, holding that

9

the plaintiffs failed to explain how "[p]arty opinions and negotiated settlements concerning *different* and entirely *unrelated* plans" provide a meaningful comparison to the plan's recordkeeping fees at issue. *Id.* (alteration in original) (citation omitted). The court observed that holding otherwise would permit plaintiffs to "dodge the requirement for a meaningful benchmark." *Id.* (citation omitted). Here too, the Court should not permit Plaintiffs to plead excessive recordkeeping claims on the basis of "[p]arty opinions and negotiated settlements concerning *different* and entirely *unrelated* plans." *See id.* (alteration in original).

### 3. Plaintiffs' Speculative Allegation That Plan Fiduciaries Did Not Conduct A Request For Proposal Does Not Suggest Imprudence

Plaintiffs allege, without citing any factual support, that "there is little to suggest that Defendants conducted a RFP [Request for Proposal] at reasonable intervals – or certainly at any time prior to 2016 through the present – to determine whether the Plan could obtain better recordkeeping and administrative fee pricing from other service providers." (Compl. ¶ 74.) Even crediting Plaintiffs' conclusory allegations, they are insufficient to create an inference of imprudent conduct. Numerous courts have held that ERISA does not compel plan fiduciaries to regularly solicit quotes or competitive bids from recordkeepers to satisfy their fiduciary obligations. *See, e.g.*, *Albert II*, 47 F.4th at 579 (observing that "[i]n *Divane*, we rejected the notion that a failure to regularly solicit quotes or competitive bids from service providers breaches the duty of prudence"); *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808, at *14 (N.D. Cal. Aug. 29, 2016) (holding that "the allegation that the Plan fiduciaries were required to solicit competitive bids on a regular basis has no legal foundation"); *Riley*, 2022 WL 2208953, at *5 ("assertions that the investment committee failed to conduct periodic requests for proposal and to renegotiate also do not cause the Court to draw an inference that the investment committee acted imprudently"). The same result is warranted here.

10

**B.      Plaintiffs' Allegations Concerning The Plan's Target
         Date Funds Fail To State A Claim For Breach Of Fiduciary Duty**

Plaintiffs allege that Defendants breached their fiduciary duty of prudence by

creating and retaining "their own suite of target date funds" – the Reyes Target Date Funds.

(Compl. ¶ 87.)  In support, Plaintiffs compare the Reyes Target Date Funds to seven arbitrarily-

selected retail funds, some of which are merely alternative share classes of one another

(collectively, the "Target Date Comparator Funds").  (*Id.* ¶ 88.)  Even taken as true, Plaintiffs'

allegations concerning the Reyes Target Date Funds consist of nothing more than assertions that

(1) the Reyes Target Date Funds underperformed the Target Date Comparator Funds "at the

three- and five-year mark" as of a *single quarter end in 2021* and (2) the performance of the

Reyes Target Date Funds did not change sufficiently across different vintages as compared to the

Target Date Comparator Funds as of the same quarter end.  (*Id.* ¶¶ 87-90.)  Plaintiffs assert that

as a result, Defendants should have replaced the Reyes Target Date Funds "at the beginning of

the Class Period," *i.e.*, in June 2016.  (*Id.* ¶ 88.)  For multiple reasons, Plaintiffs' threadbare and

hindsight-based allegations concerning the Reyes Target Date Funds' performance compared

against arbitrarily-selected retail funds do not support an inference of imprudent conduct.

*First*, although Plaintiffs assert that the Target Date Comparator Funds are

"properly performing target date funds" (Compl. ¶ 88),[5] Plaintiffs do not provide any additional

information concerning the proffered comparator funds, including information about their

investment strategies, target date glide paths, risk profiles, or the types of underlying assets

included in the funds, including whether they are primarily actively or passively managed.  Like

---

[5]      Ironically, Plaintiffs' counsel has filed lawsuits similar to this one against other
retirement plan sponsors criticizing their decision to retain some of the Target Date Comparator
Funds in their plans.  (*See, e.g.*, Ex. 4 (*Jones v. Coca-Cola* Complaint) (alleging that the
defendants acted imprudently by retaining the Fidelity Freedom Funds in their retirement plan).)

their recordkeeping allegations, Plaintiffs' sparse allegations fail to provide the kind of

information that would allow the Court to "apply a 'careful, context-sensitive scrutiny'" of the

Complaint as required by the Seventh Circuit. *See Albert II*, 47 F.4th at 577 (citation omitted).

This Court recently dismissed similar allegations challenging a retirement plan's retention of

custom target date funds that allegedly underperformed certain comparator funds. *See*

*Baumeister*, 2022 WL 4477916, at *2. (*See also* Ex. 5 (*Baumeister* Complaint) ¶¶ 6, 109-116.)

There, Judge Blakey held that "in the absence of facts to show that the comparator funds are

appropriate benchmarks, the comparative performance data remains insufficient to state a claim."

*Baumeister*, 2022 WL 4477916, at *2. Similarly, in *Wehner v. Genentech, Inc.*, the plaintiff

challenged inclusion of custom target date funds in a plan based on a performance comparison

with six retail target date funds. No. 20-CV-06894-WHO, 2021 WL 2417098, at *8 (N.D. Cal.

June 14, 2021). The court dismissed those allegations, observing that plaintiff "fail[ed] to

explain why his identified comparators . . . serve as meaningful benchmarks," and holding that:

> [g]eneral assertions that the [custom] TDFs, the retail TDFs, and the
> S&P Indices all share the same overall purpose and strategy and that
> there is no difference between the aims of the Roche TDFs and the
> retail TDFs are not enough to support an apples-to-apples
> comparison without factual allegations that compare the products'
> styles and strategies to support a finding of meaningful benchmark.

*Id.* (internal quotation marks and citation omitted). *See also Jacobs v. Verizon Commc'ns, Inc.*,

No. 16 CIV. 1082 (PGG), 2017 WL 8809714, at *6 (S.D.N.Y. Sept. 28, 2017) (rejecting the

argument that plan participants "would have fared far better had [d]efendants simply offered

them the option of investing in 'off-the-shelf' Vanguard TDFs rather than riskier actively-

managed custom-designed funds" and holding that "[e]ven if the Complaint plausibly alleged

that Vanguard's target date funds outperformed the Verizon TDFs, '[t]he ultimate outcome of an

investment is not proof of imprudence or breach of fiduciary duties'" (citation omitted)).

Plaintiffs' failure to provide any information about the Target Date Comparator Funds renders their comparison meaningless.

Second, Plaintiffs' only support for their contention that the Reyes Target Date Funds underperformed is a single table, constructed with the benefit of perfect hindsight, comparing their performance against the Target Date Comparator Funds as of *a single quarter end in 2021*. (Compl. ¶ 88.) Plaintiffs do not explain how three- and five-year performance as of the third quarter of 2021, which could *not* have been known to Defendants in 2016, supports an inference that Defendants acted imprudently by not replacing the Reyes Target Date Funds at "the beginning of the Class Period." (*See* Compl. ¶ 88.) *See DeBruyne v. Equitable Life Assurance Soc'y of U.S.*, 920 F.2d 457, 465 (7th Cir. 1990) ("[t]he fiduciary duty of care . . . requires prudence, not prescience," and "the ultimate outcome of an investment is not proof of imprudence" (citations omitted)); *Albert II*, 47 F.4th at 579 (same). Moreover, even taking Plaintiffs' performance allegations as true, the Reyes Target Date Funds' returns were never less than any of the Target Date Comparator Funds by more than 2.18% across any vintage over either the three- or five-year periods. (*See* Compl. ¶ 88.) Such a minimal difference in returns does not support an inference of a fiduciary breach. *See, e.g.*, *Patterson v. Morgan Stanley*, No. 16-CV-6568 (RJS), 2019 WL 4934834, at *10 (S.D.N.Y. Oct. 7, 2019) (holding that a "small disparity in performance . . . does not support the inference that Defendants were imprudent"). In any event, even if an investment option does underperform other available funds, multiple courts have recognized that a "fiduciary may – and often does – retain investments through a period of underperformance as part of a long-range investment strategy." *White*, 2016 WL 4502808, at *17; *see also Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006) (holding that a fiduciary could prudently select "funds with long-term growth potential and . . . stay with

those . . . funds even during years of lower performance"); *Smith*, 37 F.4th at 1166 ("Precipitously selling a well-constructed portfolio in response to disappointing short-term losses, as it happens, is one of the surest ways to frustrate the long-term growth of a retirement plan.").  Therefore, Plaintiffs' allegation that the Reyes Target Date Funds underperformed as of a single quarter end is woefully inadequate to support their fiduciary breach claims.

*Third*, while Plaintiffs allege that the Reyes Target Date Funds "failed to meaningfully change their risk return profile as an investor grows closer to retirement age" (Compl. ¶ 87), Plaintiffs do not provide any information about the "risk return profile" of the Reyes Target Date Funds, such as their underlying funds or other risk metrics.  Instead, Plaintiffs' only supporting allegation is that the difference in the three-year returns of the Reyes Target Date 2030 Fund and the Reyes Target Date 2035 Fund was 0.86% while the difference in three-year returns of the 2030 and the 2035 vintages of one of the Target Date Comparator Funds was 1.15%.  (*Id.* ¶ 90.)  Not only does that amount to a net difference of a mere 0.29%, but also two of the Target Date Comparator Fund suites that Plaintiffs describe as "properly performing" have a *smaller* change in return between their 2030 and 2035 vintages over the three-year period than the Reyes Target Date Funds.  (*See id.* ¶ 88.)  In particular, the State Street Target Retirement 2030 K Fund and State Street Target Retirement 2035 K Fund had a difference of 0.85% in returns and the T. Rowe Price Retirement I 2030 Fund and the T. Rowe Price Retirement I 2035 Fund had a difference of only 0.76% in returns.  Plaintiffs' paltry and illogical allegations do not support an inference of imprudent conduct by Defendants.

**C.**   **Plaintiffs' One-Paragraph Performance Allegations Concerning The Hartford Mid Cap Fund Are Woefully Inadequate To State A Claim**

In a last-ditch attempt to state a claim, Plaintiffs allege – in a single paragraph – that the Hartford Mid Cap Class Y Fund underperformed its "peers," including by

14

allegedly "perform[ing] worse than 94% of hundreds of its peers at the 3-year mark and worse than 81% of its peers at the five year mark." (Compl. ¶ 91.) For all of the reasons described above, these allegations do not state a claim. In particular, Plaintiffs fail to identify the time period during which the Hartford Mid Cap Class Y Fund allegedly underperformed, the alleged "peers" that Plaintiffs are using as comparators, or why those "peers" constitute appropriate comparators. In any event, "the ultimate outcome of an investment is not proof of imprudence." *See Albert II*, 47 F.4th at 579 (citation omitted).

## II. PLAINTIFFS' CONCLUSORY ALLEGATIONS CONCERNING THE DUTY TO MONITOR FAIL TO STATE A CLAIM (COUNT II)

Count II alleges that Reyes and Reyes's Board of Directors breached their fiduciary duties by failing to monitor and evaluate the performance and processes of other fiduciaries of the Plan. (Compl. ¶¶ 101-106.) Count II should be dismissed because it is merely derivative of Plaintiffs' prudence claims. Courts have repeatedly dismissed such derivative claims where, as here, the underlying breach of fiduciary duty allegations fail to state a claim. *See, e.g.*, *Albert I*, 2021 WL 3932029, at *7 ("Plaintiff's breach of the duty to monitor claim is derivative of the breach of fiduciary duty claim. Because Plaintiff has failed to state a claim for breach of fiduciary duty, his breach of the duty to monitor claim must be dismissed"); *Riley*, 2022 WL 2208953, at *7 (dismissing failure to monitor claim where the plaintiffs' "only argument against dismissal presumes that they state a breach-of-fiduciary-duty claim against the investment committee").

### CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss should be granted, and the Complaint dismissed with prejudice.

Dated:  September 30, 2022

Respectfully submitted,

/s/ *Matthew R. Kipp*
Matthew R. Kipp (6201470)
Laura Bernescu (6316545)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
155 N. Wacker Drive, Suite 2700
Chicago Illinois 60606
Telephone:     312-407-0700
matthew.kipp@skadden.com
laura.bernescu@skadden.com

James R. Carroll (*pro hac vice* pending)
Michael S. Hines (*pro hac vice* pending)
Mary E. Grinman (*pro hac vice* pending)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
Telephone:     617-573-4800
james.carroll@skadden.com
michael.hines@skadden.com
mary.grinman@skadden.com

*Counsel for Defendants*
*Reyes Holdings, L.L.C., The Board Of*
*Directors Of Reyes Holdings, L.L.C., and*
*Reyes Holdings, L.L.C. Employee Benefits*
*Committee*

**APPENDIX A**

**Reyes Holdings 401(k) Thrift Plan Investment Options As Of December 31, 2020**[1]

| **I. Target Date Funds** | |
|---|---|
| 1. | Reyes Target 2020 Fund |
| 2. | Reyes Target 2025 Fund |
| 3. | Reyes Target 2030 Fund |
| 4. | Reyes Target 2035 Fund |
| 5. | Reyes Target 2040 Fund |
| 6. | Reyes Target 2045 Fund |
| 7. | Reyes Target 2050 Fund |
| 8. | Reyes Target 2055 Fund |
| 9. | Reyes Target 2060 Fund |
| 10. | Reyes Target Retirement Income Fund |
| **II.  Growth Funds** | |
| 11. | DFA US Small Cap Portfolio |
| 12. | JPMorgan Mid Cap Value Fund |
| 13. | MainStay Winslow Large Cap Growth Fund |
| 14. | Vanguard Extended Market Index Fund |
| 15. | Hartford Mid Cap Fund |
| **III.  Growth & Income Funds** | |
| 16. | Columbia Dividend Income Fund |
| 17. | Vanguard Institutional Index Fund |
| **IV. International Funds** | |
| 18. | American Funds – EuroPacific Growth Fund |
| 19. | Invesco Developing Markets Fund |
| 20. | Invesco Global Real Estate Fund |
| 21. | Vanguard International Value Fund |
| 22. | Vanguard Total International Stock Fund |
| **V. Income Funds** | |
| 23. | Loomis Sayles Investment Grade Bond Trust |
| 24. | PIMCO Total Return Fund |
| 25. | Vanguard Total Bond Market Index Fund |
| **VI. Stable Value Funds** | |
| 26. | Reyes Capital Preservation Fund/PGIM Stable Value Fund |

---

[1]        (*See* Ex. 1 (2020 Form 5500).)